UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| MAN AGAINST XTINCTION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COMMISSIONER OF MAINE )<br>DEPARTMENT OF MARINE RESOURCES; )<br>ASSISTANT ADMINISTRATOR OF )<br>NATIONAL MARINE FISHERIES )<br>SERVICE, )<br>)<br>Defendant. | Case No. 1:19-cv-00406-LEW |

**DECISION AND ORDER ON**
**FEDERAL DEFENDANT'S MOTION TO DISMISS**

Plaintiff Richard Maximus Strahan, or "Man Against Xtinction" as he dubs himself in his Complaint, brings this action against Defendants Commissioner of State of Maine's Department of Marine Resources ("State Defendant") and Assistant Administrator of National Marine Fisheries Service ("Federal Defendant" or "NMFS"),[1] seeking declaratory and injunctive relief pursuant to the Endangered Species Act. On January 6, 2020 the State Defendant filed an Answer. ECF No. 23. The Federal Defendant filed a Motion to Dismiss on January 27, 2020, which is now before me. ECF No. 28. Despite receiving an extension (ECF No. 35) the Plaintiff failed to respond to the Federal Defendant's Motion, so the

---

[1] Although Plaintiff brings his claim against the Commissioner and the Assistant Administrator of these agencies, respectively, he sues both in their official capacities (ECF No. 1 at *5), so, in effect, is suing the agencies themselves rather than the individuals. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent" and is therefore "to be treated as a suit against the entity").

Motion is now ripe. For the reasons that follow, the Federal Defendant's motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Plaintiff alleges that Defendant NMFS is injuring or killing endangered whales and sea turtles[2] as a result of its licensing and regulating certain commercial fishing practices off the east coast of the United States in violation of Sections 7 and 9 of the Endangered Species Act (ESA), 16 U.S.C. § 1531 (a)(1), (a)(2). He brings two different Counts against NMFS: in Count One, he claims NMFS's "Section 7 review of its licensing and regulating commercial fisheries has been arbitrary and capricious," in violation of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A), and that it is "in violation of the ESA Section 9's prohibitions against the 'taking' of ESA listed species of whales and sea turtles." Compl. ¶¶ 43, 58. In Count Two, he alleges NMFS further violated the APA by "maliciously attempting to evade the comprehensive provisions of the ESA…by unlawfully using the Marine Mammal Protection Act to allow the continued entanglement of the Right Whale by fishing gear." Compl. ¶ 63. Because Plaintiff's APA claims against NMFS depend upon the Federal Defendant's statutory obligations, I include a brief background of the relevant federal law.

### A. ENDANGERED SPECIES ACT

---

[2] The North Atlantic right whale (*Eubalaena glacialis*), 73 Fed. Reg. 12,024 (Mar. 6, 2008); sei whale (*Balaenoptera borealis*), 35 Fed. Reg. 18,319 (Dec. 2, 1970); blue whale (*Balaenoptera musculus*), *id*.; fin whale (*Balaenoptera physalus*), 35 Fed. Reg. 8,491 (June 2, 1970); sperm whale (*Physeter microcephalus*), 35 Fed. Reg. 18,319; Kemp's ridley sea turtle (*Lepidochelys kempii*), *id*.; Leatherback sea turtle (*Dermochelys coriacea*), 35 Fed. Reg. 8,491; and Hawksbill sea turtle (*Eretmochelys imbricate*), *id*.; see also 50 C.F.R. § 224.101.

Congress enacted the ESA in 1973 to conserve endangered or threatened species. 16 U.S.C. § 1531(b). Under the ESA, wildlife may be listed as either endangered or threatened. *Id.* § 1533. The Act divides responsibility for listed species between the Secretaries of Commerce and the Interior. *Id.* § 1532 (15). Section 7(a)(1) of the ESA requires the Secretaries of Commerce and the Interior to "utilize such programs [they administer] in furtherance of the purposes" of the statute. Section 7(a)(1) also requires all other federal agencies, "in consultation with and with the assistance of" NMFS or FWS (together the Services), to "utilize their authorities in furtherance of the purposes of this [Act] by carrying out programs for the conservation" of ESA-listed species. *Id.* § 1536(a)(1).

Section 7(a)(2) prohibits federal agencies from taking any action that is likely to "jeopardize the continued existence of any endangered species or threatened species" or to destroy or adversely modify its critical habitat. *Id.* § 1536(a)(2). To this end, the ESA requires that federal "action agencies" consult with NMFS whenever the agency's action "may affect" a species listed as threatened or endangered. *Id.*; 50 C.F.R. § 402.14(a). If a proposed action "may affect" a listed species, the action agency must engage in "informal" or "formal" consultation. If the action agency engages in informal consultation and it is determined "that the action is not likely to adversely affect listed species or critical habitat, the consultation process is terminated." 50 C.F.R. § 402.13(c). If, however, the action agency or the Services determine that the action is "likely to adversely affect" a listed species or critical habitat, the agencies must engage in formal consultation. *Id.* § 402.14. Formal consultation culminates in the issuance the Service's opinion on whether the

proposed action is likely to jeopardize the continued existence of the affected species or result in the destruction or adverse modification of its habitat. *Id*.

Section 9 of the ESA prohibits "take[s]" of listed species, 16 U.S.C. § 1538, which are defined to include harming, harassing, or killing listed species, among other things. *Id.* § 1532(19). If the consulting agency determines that the proposed action is not likely to jeopardize the species, but will reasonably likely result in the incidental "take" of some individual members of a listed species, the consulting agency provides an "incidental take statement" along with the biological opinion for that specific action. *See* 16 U.S.C. § 1536(b)(4)(i)-(ii). Any take that is in compliance with a written incidental take statement does not violate Section 9 of the Act. *See id.* § 1536(o)(2).

### B. ATLANTIC FISHERIES REGULATION

With the exception of some states along the Gulf of Mexico, state marine waters extend out to three nautical miles, the inner boundary of the Exclusive Economic Zone (EEZ). The EEZ, commonly called "federal waters," extends from that inner boundary with state waters to a line 200 nautical miles offshore. 16 U.S.C. § 1802(11). Each state has jurisdiction to decide whether and how to regulate fisheries in its waters. States along the Atlantic seaboard have also entered into an interstate compact establishing the Atlantic States Marine Fisheries Commission, through which they coordinate the conservation and management of their shared coastal fishery resources. Pub. L. No. 77-539, 56 Stat. 267 (1942). Through the Commission, state representatives and others develop species-specific Interstate Fishery Management Plans (FMPs), and the states then implement them. 16 U.S.C. § 5104(a). The Commission may also recommend complementary measures to

NMFS for implementation with regard to federal waters. *Id.* § 5103(b). This includes the federal regulations for American lobsters. *See* 50 C.F.R. Part 697. In addition, under the Magnuson-Stevens Fishery Conservation and Management Act (MSA), regional fishery management councils develop and recommend species-specific FMPs to NMFS for approval or disapproval, and implementation as appropriate. 16 U.S.C. § 1854. Approved FMPs govern fisheries in federal waters, but federal measures may also apply to fishing in state waters under certain circumstances.

FMPs for species can include regulations related to numerous types of fishing gear, including the pots and gillnets mentioned in the Complaint. A pot used as fishing gear is defined as "a portable, enclosed device with one or more gates or entrances and one or more lines attached to surface floats" and is also called a trap. 50 C.F.R. § 600.10. A gillnet is "a panel of netting, suspended vertically in the water by floats along the top and weights along the bottom, to entangle fish that attempt to pass through it." *Id.*

C.  MARINE MAMMAL PROTECTION ACT

Congress enacted the Marine Mammal Protection Act (MMPA) in 1972 based on its finding that certain marine mammals are in danger of extinction or depletion and that "such species and population stocks should not be permitted to diminish beyond the point at which they cease to be a significant functioning element in the ecosystem of which they are a part." 16 U.S.C. §§ 1361(1), (2). Under Section 118 of the MMPA, the Secretary of Commerce is required to "develop and implement a take reduction plan designed to assist in the recovery or prevent the depletion of each strategic stock which interacts with a commercial fishery listed [as a Category I or Category II fishery] under subsection

(c)(1)(A)(i) or (ii)." *Id.* § 1387(f)(1). The take reduction plan is drafted by a take reduction team that is composed of individuals with expertise in the conservation or biology of the marine mammal or the fisheries that are the subject of the plan. *Id.* § 1387(f)(6)(C) & (7)(A). Under these provisions, NMFS established a take reduction team for Atlantic large whales in 1996. 62 Fed. Reg. 39,157 (July 22, 1997). In 1997, that team developed a take reduction plan aimed at reducing the potential for serious injury and mortality of large whales in commercial fisheries in the Atlantic, including the American lobster fishery. *Id.* NMFS implemented the take reduction plan through regulation. 50 C.F.R. § 229.32.

## DISCUSSION

Defendant NMFS argues the Plaintiff lacks standing to bring this lawsuit in federal court under Article III of the United States Constitution, and alternatively moves to dismiss Plaintiff's Complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). Because I find Plaintiff has standing to bring suit, and states a claim in Count One of his Complaint, the Motion to Dismiss is DENIED IN PART. The whole of Plaintiff's Complaint does not survive, however. Because Plaintiff only alleges a causal connection between Defendant's actions and the North Atlantic Right Whale—not the other "endangered whales and sea turtles" listed in the Complaint—and because he fails to state an actionable claim in Count Two, the Motion is also GRANTED IN PART as to the claim in Count Two and the other species tangentially referenced in the Complaint.

### A. ARTICLE III STANDING

I start at the beginning, with the threshold question of standing. To meet the constitutional minimum required by Article III the Plaintiff "must show (1) that [he] ha[s]

suffered an injury in fact, (2) that the injury is fairly traceable to the [defendant's] allegedly unlawful actions, and (3) that 'it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Nulankeyutmonen Nkihtaqmikon v. Impson*, 503 F.3d 18, 26 (1st Cir. 2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.  At the pleading stage, therefore, I apply the plausibility standard applicable under Rule 12(b)(6) to determine whether the Plaintiff has pled adequate facts to support a finding of Article III standing.  *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016).  Furthermore, because Plaintiff is proceeding *pro se*, I construe his pleadings liberally.  *See Strahan v. Coxe*, 127 F.3d 155, 158 n.l (1st Cir. 1997) (noting obligation to construe *pro se* pleadings liberally) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

  Plaintiff alleges a variety of injuries.  Chief among them are a diminishment of his interest as an environmentalist in watching endangered whales and sea turtles at several locations along the eastern seaboard, and harm to his business where he is "paid by his clients to recover said endangered populations of marine wildlife."  Compl. ¶¶ 1, 9, 10.  The Federal Defendant counters that Plaintiff's nonspecific statements of injury as environmentalist are too general, and that any injury to his business interests lacks a sufficient nexus to NMFS agency action.  But, taking the allegations in Plaintiff's Complaint as true, I find Mr. Strahan has done enough to make out an injury as required by Article III.

Though bare-bones, Plaintiff's allegation of interest in whale-watching is enough to establish an injury-in-fact at this stage of the litigation. While Plaintiff does not specify how often he whale-watches, he does allege that he is an "avid" observer of the endangered whales and sea turtles, and that he views them at several locations along the Atlantic Coast, including in Casco Bay, Maine. Compl. ¶¶ 1, 9, 16. The Supreme Court has made clear that "desire to use or observe an animal species…is undeniably a cognizable interest for purpose of standing." *Lujan*, 504 U.S. at 562–63. And Plaintiff ties his interest to a cognizable harm. In his Complaint he plausibly alleges that NMFS's pot line and gillnetting regulations cause "takes" of endangered whales and sea turtles—increasing the species' risk of death, and reducing the likelihood that he will be able to observe them in their natural state on future visits. This is an injury-in-fact for purposes of Article III standing. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000) (stating plaintiffs meet injury in fact requirement by averring (1) they use the affected area and (2) the challenged activity will lessen their recreational and aesthetic interest in the area); *Sierra Club v. Morton*, 405 U.S. 727, 734, (1972) (finding that an adverse effect on the "scenery, natural and historic objects, and wildlife" of a park that "would impair the enjoyment of the park" by those who use it would constitute a cognizable harm); *Animal Welfare Inst. v. Martin*, 623 F.3d 19, 25 (1st Cir. 2010) (likelihood that State of Maine regulations increased risk of "takes" of threatened Canada Lynx constituted an injury in fact to environmentalist plaintiffs). As these cases illustrate, harm to other environmentalists' similar injuries have long counted as injuries for purposes of Article III

standing. Taking the allegations in Plaintiff's Complaint as true, I find he has likewise pled an injury-in-fact to his interest in viewing endangered whales and sea turtles.

Not only has Plaintiff alleged an injury to his environmental interest, he has also alleged the quintessential injury-in-fact—harm to his wallet. As the First Circuit has repeatedly held, "actual economic loss…is the prototypical concrete harm." *Gustavsen v. Alcon Labs., Inc.*, 903 F.3d 1, 8 (1st Cir. 2018). And here, Plaintiff has alleged facts to suggest he would lose money if NMFS's regulations remain in place. His Complaint describes a business where clients pay him "to recover said populations of endangered species [*i.e.* whales and sea turtles]." Compl. ¶ 16. If these endangered whales and sea turtles disappear due to NMFS's fishery regulations, as Plaintiff alleges they will, it will cause his business to suffer. Taking Plaintiff's allegations as true, he has adequately pled an injury to his environmental interest and his business "recover[ing]" the endangered species listed in his Complaint.

I likewise find that Plaintiff has pled sufficient facts that his injuries are fairly traceable to the challenged NMFS regulations. To satisfy this causation prong of the standing inquiry, the Plaintiff's Complaint must "show a sufficiently direct causal connection between the challenged action and the identified harm." *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012). Plaintiff makes this connection, but not with respect to all the endangered species he names in his Complaint. At a high level, Plaintiff alleges that Defendant NMFS mandates certain fishery gear in the EEZ,[3] and that its vertical buoy rope

---

[3] The EEZ, commonly called "federal waters," extends from that inner boundary with state waters to a line 200 nautical miles offshore. 16 U.S.C. § 1802(11).

and gill net regulations cause harmful entanglement of endangered whales and sea turtles. Compl. ¶¶ 29-41. But the Complaint only specifically connects NMFS action to demonstrable harm for only one species, the North American Right Whale; despite sporadic mentions of harm to other endangered whales and sea turtles, the Complaint does not allege any specific facts about harm to these species, leaving them to one side like so much flotsam and jetsam. Because Plaintiff directly attributes the diminishing Right Whale population to entanglement in buoy ropes and gill nets licensed by NMFS, but does not do so for any of the other species named in the Complaint, I find he has alleged sufficient causation only with respect to Defendant's regulations that affect the Right Whale. *See, e.g.*, Compl. ¶ 41.

Having found that Plaintiff satisfactorily alleged an injury in fact, traced his injury and the diminishing Right Whale population to NMFS action,[4] and since his claims are redressable by the injunctive relief he seeks,[5] I find the Plaintiff has standing to sue under Article III.

### B. RULE 12(B)(6)

Defendant also argues that Plaintiff has failed to state a claim for relief. A challenge under Rule 12(b)(6) tests the facts to insure they "contain enough meat to support a reasonable expectation that an actionable claim may exist." *Andrew Robinson Int'l v. Hartford Fire Ins. Co.*, 547 F.3d 48, 51 (1st Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*,

---

[4] The First Circuit has upheld a District Court's judgment in favor of Mr. Strahan alleging the very same causal chain he alleges here. *See Strahan v. Coxe,* 127 F.3d 155, 163 (1st Cir. 1997) ("[T]he district court properly found that a governmental third party pursuant to whose authority an actor directly exacts a taking of an endangered species may be deemed to have violated the provisions of the ESA.")

[5] Likewise for redressability. *Ibid.*

550 U.S. 544 (2007)). In evaluating a Rule 12(b)(6) motion to dismiss, courts apply a two-pronged test. First, they screen the complaint for statements that "merely offer 'legal conclusions couched as fact' or 'threadbare recitals of the elements of a cause of action.'" *Ocasio–Hernández v. Fortuño–Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (citations omitted). Second, they determine whether the factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. If "the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc) (citing *Twombly*, 550 U.S. at 555).

   **1. Count One**

Plaintiff's case lives primarily in Count One, which houses related claims that the Defendant acted arbitrarily, capriciously, or not in accordance the law when it failed to meet its obligations under both Sections 7 and 9 of the ESA. For the reasons that follow, I find Plaintiff has alleged sufficient facts to state these claims against NMFS, and Defendant's Motion to Dismiss is denied as to Count One.

   *a. Section 7*

As noted previously, Section 7 of the ESA contains both substantive and procedural requirements for federal agencies when their actions affect listed species. Substantively, it requires federal agencies to "insure that agency action 'is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species.'" *Water Keeper All. v. U.S.*

11

*Dep't of Def.,* 271 F.3d 21, 25 (1st Cir. 2001) (quoting 16 U.S.C. § 1536(a)(2)). Procedurally, Section 7 establishes the methods of informal and formal consultation "to determine whether endangered species or critical habitat are jeopardized by proposed agency action and whether this adverse impact may be avoided or minimized." *Id*. Plaintiff alleges that NMFS is violating Section 7 by "negligently adopt[ing] enforcement ESA Section 9 policy without the requisite ESA Section 7 review," either by failing to issue incidental take permits, or doing so in violation of the law. Compl. ¶¶ 58, 61. This amounts to an allegation that NMFS failed either to carry out its procedural obligation to analyze the impact of vertical buoy ropes and gill net lines on Right Whales, or, substantively, to insure they are not likely to be jeopardized by NMFS-regulated fisheries using vertical buoy ropes or gill nets.

The Defendant counters that "Plaintiff's scattershot references to Section 7 fail to state a claim because they are untethered to the relevant statutory language, ignore the agency's enforcement discretion, and lack any details fleshing out the alleged violation." Mot. to Dismiss at 25. But Plaintiff does all three, at least well enough to survive a motion to dismiss. To begin with, the Complaint sufficiently connects the alleged violation—the failure to consider the effect of licensed buoy ropes and gill nets on the Right Whale population—to the Section 7 language giving rise to NMFS's statutory obligation. Compl. ¶¶ 21-25 (describing NFMS's Section 7 obligations) and ¶¶ 45, 47 (alleging that NMFS failed to abide by those obligations). Furthermore, the Section 7 obligations are not "committed to agency discretion" such that they are immune to APA review. *See Strahan* 127 F.3d at 164 (affirming, in part, grant of summary judgment to Plaintiff under Section

7); *see also Oceana, Inc. v. Pritzker,* 75 F. Supp. 3d 469, 486 (D.D.C. 2014) (finding Defendant NMFS's Section 7 obligations reviewable under the APA). Plaintiff has sufficiently pled that Defendant NMFS failed to perform its procedural or substantive duties under Section 7, and connected that alleged violation to sufficient facts concerning the effect of vertical buoy ropes and gill nets on the Right Whale population; this is enough to state a claim against NMFS.

     *b. Section 9*

Plaintiff also alleges that Defendant is violating the APA by failing to comply with its obligation in Section 9 of the ESA to prohibit takes of endangered species. 16 U.S.C. § 1538 (a)(1)(B). Section 9 extends the reach of 1538(a) beyond a particular defendant's individual acts to also encompass third-party acts solicited or caused to be committed by another. *See* 16 U.S.C. § 1538(g) (unlawful for any person to "cause to be committed, any offense defined in [Section 9]"). The First Circuit has concluded that where the state "has licensed commercial fishing operations to use...lobster pots in specifically the manner that is likely to result in a violation of federal law," the licensure activity amounts to a Section 9 "take." *Strahan*, 127 F.3d at 164. Accordingly, to survive a motion to dismiss, the Complaint must plausibly allege facts showing that NMFS has licensed fishery operations that are "likely to result in a violation of federal law." *Id.*

Plaintiff has alleged exactly that. He pleads a set of facts that, if true, suggest NMFS's vertical buoy rope and gill net regulations are arbitrary, capricious, or not in accordance with the law because they are likely to result in a violation of the agency's obligations under ESA Section 9. An agency decision is arbitrary and capricious if it

"relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Plaintiff alleges NMFS failed to consider that its regulation of vertical buoy lines and gill nets would "kill[] and injure[] numerous Right Whales," in violation of the ESA. Compl. ¶ 45. If true, and if Defendant indeed failed to account for the likelihood that vertical buoy lines and gill nets would cause "takes" of endangered Right Whales, Plaintiff could obtain relief under the APA. *See* 16 U.S.C. § 1536(b)(4)(i)-(ii); 50 C.F.R. § 402.02.

       NMFS moves to dismiss these Section 9 allegations as insufficiently specific to state a claim. Defendant argues the Complaint fails to "identify a discrete agency action necessary to invoke the ESA's or APA's limited waiver of sovereign immunity," and lacks specificity as to where, when, and how any Right Whales were "taken" by a federally-regulated buoy or gill net. Mot. to Dismiss at 24. Though the Complaint does not cite the agency's regulations as they are codified in the federal register, the *pro se* Plaintiff's clear references to "[NMFS's] licensing and regulating Lobster Pot and Gill Net fishing" do enough to identify "discrete agency action." *See* 50 C.F.R. § 402.02 (defining agency action as "licensing" and the other agency responsibilities under the ESA). The Plaintiff also does enough—at the pleading stage—to connect the allegations that Right Whales are being "taken," to the alleged cause of those takes, the federally-licensed lobster fishery. For example, he plausibly alleges that five North Atlantic Right Whales were found dead

14

in U.S. waters, and that at least two of those deaths showed "evidence of entanglement." Compl. ¶ 39. The Plaintiff bolsters this specific allegation of harm with data suggesting a broader inference: that most Right Whales suffer from entanglement, that death-by-entanglement is notoriously difficult to ascribe to a particular buoy rope or gill net, and that, by extension, each individual regulatory body evades responsibility for the harm caused by the fishery gear it licenses. *See* Compl. ¶¶ 28-41. Taking these allegations as true, I find Plaintiff has provided more than enough specificity to identify a discrete agency action and harm at least plausibly connected to Defendant NMFS to survive the motion to dismiss his Section 9 claim.

2. **Count Two**

Plaintiff's Count Two alleges that Defendant NMFS is "usurping its authority under the MMPA and its [sic] unlawful." Compl. ¶ 64. In essence, Plaintiff alleges NMFS is hiding behind the less stringent requirements of the MMPA instead of following the more rigorous procedural and substantive responsibilities of ESA Section 7, and in so doing is violating its responsibilities under the APA. *Id. ¶* 63. As pled, however, it is difficult to discern how this is distinct from Count One. To the extent Plaintiff is arguing the Defendant is following the obligations of the MMPA instead of its obligations under Section 7 of the ESA, Count Two is simply a recapitulation of the Section 7 claim in Count One. The Complaint makes no mention of a specific agency action or rulemaking under the MMPA to consider under the APA. *See* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.") It also fails to identify how that agency action

violates the statute.  Plaintiff simply alleges that NMFS "is usurping its authority under the MMPA" and "using the MMPA protocols unlawfully."  Compl. ¶ 64.  Because I find Count Two simply restates Plaintiff's Section 7 claim in Count One and does not state an independent APA claim for some particular agency action taken under the MMPA, I will dismiss Count Two for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

For the foregoing reasons, the Federal Defendant's Motion to Dismiss (ECF No. 28) is GRANTED IN PART and DENIED IN PART.  Plaintiff may proceed on the ESA Section 7 and Section 9 claims, which allege NMFS acted arbitrarily, capriciously, or not in accordance with the law concerning the effects its regulation of vertical buoy lines and gill nets would have on the North Atlantic Right Whale population.  Because the Plaintiff has withdrawn his Motion for Preliminary Injunction (ECF No. 5), and because I find no hearing is required to decide the Motion to Dismiss, Defendant's Motion to Consolidate Hearing on Preliminary Injunction Motion with Proceeding on the Merits (ECF No. 27) is DENIED.

**SO ORDERED.**

Dated this 4th day of May, 2020.

/S/ Lance E. Walker
**LANCE E. WALKER**
**UNITED STATES DISTRICT JUDGE**