UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| MAN AGAINST XTINCTION,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF MAINE DEPARTMENT OF MARINE RESOURCES; ASSISTANT ADMINISTRATOR OF NATIONAL MARINE FISHERIES SERVICE,<br><br>Defendants,<br><br>DISTRICT 4 LODGE OF THE INTERNATIONAL ASSOCATION OF MACHINISTS AND AEROSPACE WORKERS, LOCAL LODGE 207, f/k/a, IAMAW MAINE LOBSTERING UNION–LOCAL 207, MAINE LOBSTERMEN'S ASSOCIATION<br><br>Intervenor-Defendants. | 1:19-cv-00406-LEW |

## **ORDER ON PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION**

Plaintiff has two Motions for Preliminary Injunction pending, one against each Defendant.  On May 15, 2020, Plaintiff filed a Motion for Preliminary Injunction against Defendant Commissioner of State of Maine's Department of Marine Resources (the "State Defendant"), asking the Court to prevent him "from further licensing any fishing gear utilizing [vertical buoy ropes]" in Maine waters.  ECF No. 37 at 2.[1]  Plaintiff also filed a

---

[1] In the interim, Plaintiff moved to amend his complaint (ECF No. 51).  Because the proposed amendment would have affected the scope of Plaintiff's requested injunctive relief, his motions for preliminary injunction were held in abeyance during briefing of the motion to amend.  Having ruled on the motion to amend, I now consider his requests for preliminary relief in light of the operative complaint (ECF No. 1).

Motion for Preliminary Injunction against Defendant Assistant Administrator of National Marine Fisheries Service (the "Federal Defendant"), seeking the same relief, but in the federally-regulated coastal fishery.  ECF No. 54.  For the reasons that follow, the Motions for Preliminary Injunction are DENIED.

## BACKGROUND

I provide a brief summary of what remains of Plaintiff's claims from his original Complaint, as he has tacked back and forth once or twice.  At the outset, the Plaintiff filed a Complaint seeking declaratory and injunctive relief under Sections 7 and 9 of the Endangered Species Act (Count I) and the Marine Mammal Protection Act (Count II).  On May 4, 2020, I dismissed the Plaintiff's claims under the MMPA, and narrowed Count I to the plausible allegations that Defendants had violated ESA Sections 7 and 9 by licensing fishing activity that caused takes of the North Atlantic Right Whale, an endangered species. Subsequently, the Plaintiff disclaimed his ESA Section 7 allegations.  For example, he described any suggestion that he asserts claims under Section 7 of the ESA as "insane and meritless."  ECF No. 77 at 2; *see also* ECF No. 76 at 3 (calling the Federal Defendant's claim that the Plaintiff brings an ESA Section 7 claim "maliciously false….I am not."); ECF No. 66 at 2 ("I am not bringing any ESA Section 7 claims against Oliver/NMFS….I am not challenging any ESA Section biological opinion issued by Defendant Oliver/NMFS….Count I of my original and amended complaint only brings claims against both state and federal defendant for engaging in ESA Section 9 prohibited conduct. It does not bring any ESA Section 7 claim against either [the] state or federal defendant.").  What

is left, then, is an ESA Section 9 claim that Defendants have caused the unlawful take of a North Atlantic Right Whale sometime after September 2013.[2]

Plaintiff alleges the Defendants caused this harm by licensing vertical buoy ropes (VBRs)[3] in their jurisdictional waters, which in turn fatally entangled North Atlantic Right Whales.  ECF No. 47 at 2, ECF No. 59 at 2.  Both gillnet and lobsterpot fishermen use VBRs, though lobster pots make up the vast majority of buoy lines in Defendants' regulated fisheries.  ECF No. 58-11 at 2; *see also Conservation Law Found. v. Ross*, 422 F. Supp. 3d 12, 15 (D.D.C. 2019) (quoting Michael Asaro, Chief, Greater Atlantic Region, Marine Mammal and Sea Turtle Branch of NOAA Fisheries, as testifying that "gillnet gear is a minor contributor to the overall right whale entanglement risk...because lobster fishing accounts for over 97% of the vertical lines on the east coast.").  For example, Maine lobstermen fish about 3 million traps, New Hampshire lobstermen 71,000 traps, and Massachusetts lobstermen around 300,000 traps; there are between 50,000 and 80,000 traps in federal waters.  In all, the three million licensed traps in Maine's fishery represent an estimated 87% of the U.S. Atlantic lobster fishery.  ECF No. 58-11 at 3.

## DISCUSSION

### A. Preliminary Injunction Standard

Injunctive relief is "an extraordinary and drastic remedy that is never awarded as of right."  *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st

---

[2] Because the ESA does not prescribe a statute of limitations, courts apply the six year statute of limitations for suits against the United States.  *See, e.g., Ctr. For Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006) (citing 28 U.S.C. § 2401(a)). Plaintiff filed the complaint in September 2019, and thus the six-year window began in September 2013.

[3] VBRs are fixed fishing gear with a vertical line from the ocean floor to the surface, used most prominently by the lobster fishery  ECF No. 58-11 at 3.

Cir. 2011) (citations and quotation marks omitted).  "To grant a preliminary injunction, a district court must find the following four elements satisfied: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent interim relief, (3) a balance of equities in the plaintiff's favor, and (4) service of the public interest."  *Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc.*, 794 F.3d 168, 171 (1st Cir. 2015).  As the party seeking injunctive relief, Plaintiff bears the burden of establishing that the factors weigh in his favor.  *Nat'l Org. for Marriage v. Daluz*, 654 F.3d 115, 117, 119-20 (1st Cir. 2011).

"Likelihood of success is the main bearing wall of the four-factor framework." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 16 (1st Cir. 1996).  On this issue "the district court is required only to make an estimation of likelihood of success and 'need not predict the eventual outcome on the merits with absolute assurance.'"  *Corp. Techs., Inc. v. Harnett*, 731 F.3d 6, 10 (1st Cir. 2013) (quoting *Ross–Simons*, 102 F.3d at 16).  The moving party's burden to show it is "likely to succeed" varies depending on the relevance of the remaining preliminary injunction factors.  If the party seeking injunctive relief fails to make a persuasive showing of likelihood of success, then generally the court acts within its discretion if it denies relief without addressing the remaining factors.  *New Comm. Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002).  But the strength of the other three factors can lessen the movant's burden of showing "likelihood of success;" as other circuits to consider the issue have pointed out, "[h]ow strong a claim on the merits is enough depends on the balance of the harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief."  *See, e.g., Hoosier Energy Rural Elec. Coop., Inc. v.*

*John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009) (Easterbrook, C.J.). Ultimately, "trial courts have wide discretion in making judgments regarding the appropriateness of such relief." *Francisco Sánchez v. Esso Standard Oil Co.*, 572 F.3d 1, 14 (1st Cir. 2009).

Although I must evaluate each of the four considerations, the First Circuit has found that under the Endangered Species Act, the balance of the hardships and the public interest tip "heavily in favor of protected species." *Strahan v. Coxe*, 127 F.3d 155, 160 (1st Cir. 1997). But as with any preliminary injunction, the injunction shall only issue if plaintiff makes a clear showing that it is entitled to such relief. *Winter v. Natural Res. Def. Council*, Inc., 555 U.S. 7, 22 (2008). Plaintiff does not seek a run-of-the-mill prohibitory preliminary injunction, either. He instead asks for mandatory preliminary injunctive relief, which requires affirmative action by the non-moving party in advance of trial (here, re-jiggering the regulation of the lobster fishery in Maine- and federally-regulated waters). "Because a mandatory preliminary injunction alters rather than preserves the status quo, it normally should be granted only in those circumstances when the exigencies of the situation demand such relief." *Braintree Labs., Inc. v. Citigroup Glob. Markets Inc.*, 622 F.3d 36, 40–41 (1st Cir. 2010) (internal citation omitted). Those exigencies are still measured according to the same four-factor test, as "[t]he focus always must be on prevention of injury by a proper order, not merely on preservation of the status quo." *Id.*

## B.  Likelihood of Success

For Plaintiff to prevail, he must show he is likely to succeed in proving his Section 9 ESA claim against either the State or Federal Defendant. As explained above, Section 9

of the ESA prohibits the "taking" of an ESA listed species.  16 U.S.C. § 1538(a)(1).  "The proper standard for establishing a taking under the ESA, far from being a numerical probability of harm, has been unequivocally defined as a showing of 'actual harm.'"  *Am. Bald Eagle v. Bhatti*, 9 F.3d 163, 165 (1st Cir. 1993).  In other words, "for there to be 'harm' under the ESA, there must be actual injury to the listed species."  *Id*. at 166 (citing cases holding that injunctive relief is warranted "only where petitioners have shown that the alleged activity has actually harmed the species or if continued will actually, as opposed to potentially, cause harm to the species").  At this stage, the Plaintiff bears the burden of showing actual harm.  *Id*. at 167 n.5.  To prevail on his Motions, therefore, Plaintiff must demonstrate (at the very least) a take in Maine or federal waters by a VBR deployed by a Maine- or federally-licensed lobsterman within the six-year limitations period.

Plaintiff's Motions fail to bring this requisite evidence to light.  Even at this preliminary stage, prior to discovery, "the burdens at the preliminary injunction stage track the burdens at trial."  *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006).  In the ESA Section 9 context, to show he is likely to succeed this Plaintiff must be able to point to some evidence that VBR licensed by one of the Defendants has caused "actual injury to the listed species" in the fisheries at issue.[4]  *Bhatti*, 9 F.3d at 166.  For one thing, the Plaintiff concedes that he does not have "sufficient material evidence" to carry his burden for a preliminary injunction.  *See* ECF No. 76 at 1-2.  The

---

[4] Plaintiff could also introduce evidence of "significant habitat modification or degradation which actually kills or injures fish or wildlife by significantly impairing essential behavioral patterns, including, breeding, spawning, rearing, migrating, feeding or sheltering" that might also indicate a "take" of Right Whales, but has not done so.  *See* 50 CFR § 222.102.

record before me on these Motions bears this out. *See, e.g.,* ECF No. 70 ¶ 29 ("Of the right whale entanglement cases where the fishery of origin is known, there have been none attributed to Maine lobster gear since 2004."); ECF No. 82-2  at 7 ("[R]eview of right whale entanglements for which the set location and type of gear are known, and gear was recovered from a whale indicates that no such entanglements occurring from September 2013 through 2017 were linked to gear set in Federal waters. For 2018 through September 2019, preliminary information compiled to date indicates that no fishing gear recovered from a North Atlantic right whale has been confirmed at this time as having been from a U.S. fishery").[5]  Though the Plaintiff's Motions point to several studies describing the

---

[5] The following figure, showing North Atlantic right whale entanglements for which the set location and type of gear are known, and gear was recovered from a whale, is a good representation of the lack of direct evidence of entanglements linked to VBR in Maine- or federally-regulated waters since 2013. ECF Nos.

threat VBRs pose to right whales generally, he does not tie this evidence closely enough to either the Maine- or federally-regulated fishery to show he is likely to succeed in proving a VBR from one of those fisheries caused a "take" of a right whale.  I decline finding a causal link between the harm, which is demonstrably real, and these particular Defendants based on nothing more than the statistical girth demonstrating the ongoing injury to North Atlantic right whales generally.  If such a great number of right whales are being injured and killed as a result of the use of VBR, so the argument goes, then it may follow that there is a chance that VBR from Maine- or federally-regulated fisheries is the actual cause.  But legal causation does not turn on general statistical data or inductive reasoning.  I could

82-2                    at                    8,                    47-6                    at                    15.



envision Congress or an appellate court resolving this difficulty by creating a new definition of causation in the context of ESA cases.  I confess that the imaginings of a district judge are not much use to Plaintiff at this juncture.  My well-defined charge is to follow the law as given to me and the facts in the record before me.  Plaintiff's inability to connect VBR from one of the subject fisheries to the "take" of a right whale is fatal to his ability to show a likelihood of success on his ESA Section 9 claims.

Because I find Plaintiff failed to show a likelihood of success on his Section 9 claims, I will not dwell on the remaining three preliminary injunction factors.  I simply note, as I did in denying Plaintiff's request for a temporary restraining order, that the relief requested would, effectively, ban the use of buoy lines in commercial lobster fishing, which would have the practical effect of suspending the existing fishery altogether.  Such a drastic and immediate remedy would overwhelmingly impose hardship on third-party fishermen and women and effectively deprive Defendants of their role as duly-appointed executive agents with regulatory oversight of lobster fisheries and marine policy, considerations that militate strongly against mandatory preliminary injunctive relief.  *Cf. Strahan v. Sec'y, Massachusetts Exec. Office of Energy & Envtl. Affairs,* No. 19-CV-10639-IT, 2020 WL 2079302, at *14 (D. Mass. Apr. 30, 2020) (finding Plaintiff likely to succeed on a Section 9 claim, but fashioning less drastic injunctive relief, in part, because "Massachusetts fishermen will be harmed if they are enjoined from being able to fish in Massachusetts water."); *see also* ECF No. 58-9 at 9 (citing NOAA's Take Reduction Team report in 2019 that, "while vertical line reductions were seen by Team members as an essential strategy for meeting the Agency's conservation target….agreed that a one-size-fits-all-approach is

likely to be operationally problematic.").  Even if Plaintiff were able to show a likelihood of success, the preliminary injunction record does little to indicate the sweeping relief Plaintiff requests would be appropriate, upon balancing the equities.

## CONCLUSION

While the Plaintiff may not have carried his burden for preliminary relief, I do not deny his Motions lightly.  What stands out from the preliminary injunction record is that North Atlantic right whales continue to suffer a significant number of entanglements, and that most right whale entanglements cannot be attributed to a specific fishery either because the gear is not recovered or because the identifying portion of the gear (*i.e.*, the permit numbers on the buoy or the traps or nets) is lost when the whales break the gear during the entanglement.  *See, e.g.,* ECF No. 82-2 at 2 (noting that "less than one percent of all entanglements have ever been identified to original location.").  It might be unclear *where* North Atlantic right whale entanglements happen, but it is clear they are happening quite a lot.  In a particularly powerful 2019 letter several leading scientists sent to Senator Susan Collins highlighted that nearly 85% of right whales have been entangled in fishing gear at least once, 59% at least twice, and 26% of the regularly seen animals are entangled annually.  ECF No. 47-10 at 2, (citing Knowlton, A.R., P.K. Hamilton, M.K. Marx, H.M. Pettis, and S.D. Kraus. 2012. Monitoring North Atlantic right whale *Eubalaena glacialis* entanglement rates: a 30 year retrospective. Marine Ecology Progress Series 466:293-302).  These findings represent a continued increase in the percentage of whales encountering and entangling in gear, which grew from to 61.5% in 1995, to 75.6% in 2002, further confirming further the growing severity of the problem.  ECF No. 58-6 at 13.  This uptick

in entanglements suggests a very real threat to the right whale, but one the Plaintiff has not connected with enough specificity to federal or state regulations of VBRs in United States or Maine jurisdictional waters to merit a preliminary injunction in this case.

Ultimately, the existing data simply is not "sufficient material evidence" warranting the kind of injunctive relief Plaintiff seeks.  See ECF No. 76 at 1-2.  And the record also speaks loudly that state and federal agencies continue to improve on their conservation efforts "to achieve the [potential biological removal] level of less than one right whale per year in [all] New England trap/pot fisheries," not just those in the Gulf of Maine.  See 87 Fed. Reg. 37,822 (Aug. 2, 2019).  As NMFS forges ahead with a new biological opinion, and Maine continues to implement regulations to address a harm that has not definitively occurred in state waters in years, now is not the time for immodest judicial interference into a long-running state and federal conservation effort.  *See also Strahan v. Sec'y, Massachusetts Exec. Office of Energy & Envtl. Affairs*, 2020 WL 2079302, at *14 (D. Mass. Apr. 30, 2020) (finding a ban on VBRs "would not be equitable" given the "substantial efforts" undertaken by Massachusetts regulators to protect right whales).

For the foregoing reasons, the Motions for Preliminary Injunction (ECF Nos. 37, 54) are DENIED.

SO ORDERED.

Dated this 10th day of August, 2020.

/s/ Lance E. Walker
UNITED STATES DISTRICT JUDGE